No. 23-1309

# In the
# United States Court of Appeals
# for the Seventh Circuit

◆

**THE ESTATE OF NELLE HARPER LEE,**
BY AND THROUGH ITS PERSONAL REPRESENTATIVE, **TONJA CARTER,** AND
**HARPER LEE, LLC,**

*Appellants,*

v.

**THE DRAMATIC PUBLISHING COMPANY,**

*Appellee.*

◆

On Appeal from the United States District Court
for the Northern District of Illinois
Case No. 1:21-cv-05541-MFK

◆

**APPELLANTS' MOTION TO STAY BRIEFING
AND HOLD APPEAL IN ABEYANCE**

◆

David G. Hymer (Counsel of record)
Riley A. McDaniel
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
dhymer@bradley.com
rmcdaniel@bradley.com

***Attorneys for Appellants***

Pursuant to Federal Rule of Appellate Procedure 27, the Estate of Nelle Harper Lee, by and through its personal representative Tonja Carter (the "Estate"), and Harper Lee, LLC (the "LLC") move the Court to stay the briefing schedule and hold this appeal in abeyance until the United States Court of Appeals for the Second Circuit issues its decision in *Atticus Limited Liability Company v. The Dramatic Publishing Co.*, Case No. 23-1226 (2d Cir.), which involves some of the same central issues as this appeal.

## BACKGROUND

This appeal arises out of an arbitration award concerning the licensing rights to the stage adaptations of Harper Lee's 1969 novel *To Kill a Mockingbird* (the "Novel"). In 1969, Ms. Lee granted The Dramatic Publishing Company ("Dramatic") the exclusive right to license "amateur acting rights" for dramatizations of the Novel (the "1969 Agreement"). More than forty years later, Ms. Lee exercised her unqualified right under the Copyright Act of 1976, 17 U.S.C. § 304, to terminate her grant of rights in the Novel to Dramatic and to reclaim most of the rights she had transferred to Dramatic in 1969. *See* 17 U.S.C. § 304(c) ("the exclusive or nonexclusive grant of a transfer or license of the renewal copyright or any right under it . . . is subject to termination"); *id* § 304(c)(6) ("all rights under this title that were covered by the terminated grant revert, upon the effective date of termination").

2

In 2015, Ms. Lee transferred all stage rights in the Novel to Rudinplay, Inc. ("Rudinplay"), subject to whatever rights that Dramatic retained after termination. Following that grant of rights, Rudinplay contracted with Aaron Sorkin ("Sorkin") to write a new dramatization of the Novel. The Sorkin-authored play became the highest grossing play in the history of Broadway.

After Sorkin's dramatization of the Novel opened on Broadway in 2018, the Estate and the LLC became embroiled in a dispute in arbitration with Dramatic over Dramatic's post-termination rights under the 1969 Agreement. Despite Ms. Lee's termination of the grant of rights contained in the 1969 Agreement, Dramatic claimed that it retained the exclusive right to license non-first-class productions of dramatizations of the Novel under a statutory carve out, 17 U.S.C. § 304(c)(6)(A), that allows a licensee, after termination, to continue to "utilize" derivative works prepared under a grant made before termination. The arbitrator ultimately issued an award in favor of Dramatic and against the Estate on that issue. The Estate (and LLC, which was also a party to the arbitration) moved to vacate the award in the District Court and Dramatic moved to confirm it.

The Estate and LLC argued the award should be vacated because, *inter alia*, the arbitrator issued broad declaratory and injunctive relief to Dramatic based on an erroneous interpretation of 17 U.S.C. § 304(c) that would cause the Estate to violate the legal rights of third parties—Atticus LLC ("Atticus") (to whom Rudinplay

3

assigned its rights under the 2015 agreement with Ms. Lee) and Sorkin—who had not agreed to arbitrate.[1]  *See Affymax, Inc. v. Ortho-McNeil-Janssen Pharms., Inc.*, 660 F.3d 281, 284 (7th Cir. 2011) ("[A] court may set aside an award that directs the parties to violate the legal rights of third persons who did not consent to the arbitration."); *Hyatt Franchising, LLC v. Shen Zhen New World I, LLC*, 876 F.3d 900, 903 (7th Cir. 2017) ("Arbitrators 'exceed[ ] their powers' under [USCA] § 10(a)(4) if they order the parties to violate the rights of persons who have not agreed to arbitrate.").  In particular, the arbitration award enjoined the Estate and LLC from taking actions to assist Atticus in its exploitation of the rights Ms. Lee granted to Rudinplay after she terminated the 1969 Agreement, which would preclude any actions by the Estate and LLC to assist in or promote the licensing of the Sorkin dramatization for non-first-class productions.

Although the District Court agreed that an "arbitrator cannot require the parties to violate the legal rights of third parties who did not consent to arbitration," *Dramatic Publ'g Co. v. Carter*, 608 F. Supp. 3d 618, 623 (N.D. Ill. 2022) (copy attached as Exhibit A), the District Court effectively held that Rudin and Sorkin were

---

[1] The Estate and LLC also argued that the award should be vacated because (a) the Arbitrator exceeded his powers by declaring the Estate to have broad indemnification obligations to Dramatic beyond what the Ms. Lee and Dramatic agreed to and (b) because a portion of the award was too ambiguous and indefinite to be enforced. The District Court rejected the first argument and remanded the case to the Arbitrator to clarify the issues addressed in the second argument.

4

bound by the arbitrator's determination of the meaning of the Copyright Act concerning the effect of Ms. Lee's termination.[2]  *Id.* at 624–25.  The District Court

---

[2] The District Court recognized that the Estate and LLC's argument "consist[ed] of three key premises"—(1) "Lee received the non-first-class rights as a result of termination, meaning the arbitrator erred in interpreting the Copyright Act;" (2) "Rudinplay obtained the legal right to license the play for non-first-class productions from Lee;" and (3) "enjoining the respondents from assisting Rudinplay and its affiliates to license the play suffices as a violation of third-party rights that warrants vacating the award." *Dramatic*, 608 F. Supp. 3d at 624.  But the District Court only addressed the second question.  It found that "Rudinplay did not acquire the right to license its version of the play in non-first-class theaters" because the "arbitrator determined that following Lee's termination of the license . . . Dramatic continue[d] to exclusively hold all non-first-class rights."  *Id*. at 624–25.  The District Court reasoned that "the rights granted to Rudinplay [were] subject to those previously granted to Dramatic" based on this provision in the agreement between Rudinplay and Ms. Lee:

> [Lee] represents that [she] has terminated the Prior Agreement [with Dramatic] effective April 26, 2016. [Rudinplay] acknowledges that, notwithstanding such termination, the amateur acting rights to the Prior Adaptation continue to be exploited following such termination on a ***non-exclusive basis*** in the United States, and on an exclusive basis elsewhere. The rights granted hereunder shall be subject to the rights granted under the Prior Agreement, ***as limited by such termination***.

*Id.* at 624 (emphasis added).  This provision does not support the District Court's conclusion.  The provision merely recognized that Dramatic could, consistent with the Copyright Act's termination provisions, continue to utilize its adaptation of the Novel on a non-exclusive basis.  The provision did not constitute an agreement by Atticus and Sorkin to be bound by any arbitration between Ms. Lee and Dramatic, as the District Court necessarily had to determine to reach its conclusion.  The agreement did not state, for example, that Rudinplay's rights were limited by the effect of termination as to be determined by an arbitrator pursuant the arbitration provision in the 1969 Agreement.  The District Court thus could not reach the second question—whether Rudinplay obtained the legal right to license non-first-class productions—without first determining whether Ms. Lee's termination was effective under the Copyright Act.

5

thus declined to address whether the arbitrator's interpretation of the termination provisions of the Copyright Act was correct. *Id.*

In the wake of the District Court's ruling, Atticus filed a declaratory judgment action against Dramatic in the United States District Court for the Southern District of New York ("SDNY") seeking a determination of the same issue, namely whether Dramatic retained exclusive non-first-class stage rights in the Novel after Ms. Lee's termination of the grant of rights in the 1969 Agreement. *See Atticus LLC. v. Dramatic Publ'g Co.*, No. 22-CV-10147, 2023 WL 3135745, at *4 (S.D.N.Y. Apr. 27, 2023) (copy attached as Exhibit B). After consideration of the issue, SDNY reached the opposite result from the District Court. SDNY found that Atticus was not bound by the arbitrator's determination of the effect of Ms. Lee's termination of rights under the Copyright Act. *Id*. at *10. And necessarily reaching the issue that the District Court avoided, SDNY found that Dramatic did not retain exclusive licensing rights following Ms. Lee's termination of the 1969 Agreement. *Id*. at *5–7.

Dramatic appealed those findings to the United States Court of Appeals for Second Circuit. The Second Circuit appeal has been fully briefed—including an amicus brief from the U.S. Copyright Office supporting Atticus's interpretation of the effect of Ms. Lee's termination of Dramatic's rights under the Copyright Act.

6

The Second Circuit heard argument in the appeal on October 21, 2024, and that appeal has been under submissions since then.

The Estate and LLC are making this request for a stay now because this Court recently issued a briefing schedule for this appeal. The briefing schedule in this appeal had been suspended since May 25, 2023, while the parties engaged in mediation under Circuit Rule 33.

## ARGUMENT

This Court should stay the briefing schedule and hold the appeal in abeyance pending the Second Circuit's opinion. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Texas Indep. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005). A stay makes good sense here for several reasons.

*First*, the Second Circuit opinion will address two central questions in this appeal—whether Atticus and Sorkin are bound by the arbitrator's ruling on the effect under the Copyright Act of Ms. Lee's termination of her grant of rights to Dramatic under the 1969 Agreement and, if not, whether the arbitrator incorrectly interpreted the Copyright Act to allow Dramatic to retain exclusive rights to license non-first-class productions of its dramatization of the Novel even after Ms. Lee termination

7

of that grant of rights. The latter issue is subject to review under the Federal Arbitration Act because, if the arbitrator was wrong in his interpretation of the Copyright Act concerning the effect of Ms. Lee's termination of rights, his award requires the Estate and LLC to violate the rights of Atticus and Sorkin arising out of Ms. Lee's agreement with Atticus. *See Affymax*, 660 F.3d at 284; *Hyatt*, 876 F.3d at 903. The fact that Atticus even had to file the SDNY declaratory action demonstrates that the arbitrator's award impacted Atticus's and Sorkin's legal rights.

*Second*, given the Second Circuit's forthcoming decision, an abeyance will promote judicial economy and avoid the potential for inconsistent rulings. No matter the outcome, both parties will almost certainly seek to address the Second Circuit's opinion in their briefing to this Court. But if the Second Circuit issues its opinion after briefing concludes, the parties will need to file new briefs addressing the Second Circuit's opinion. A stay and abeyance would prevent piecemeal briefing and its associated expense. Unnecessary litigation could be particularly harmful here given that Dramatic will likely argue that it is entitled to recover its attorney fees from the Estate for this appeal under the arbitrator's award.

*Third*, the requested abeyance will likely be short. The Second Circuit appeal has been under submission since the oral argument on October 21, 2024. And on

average, the Second Circuit decides cases within 1.2 months of oral argument.[3] Moreover, this appeal has been stayed while the parties engaged in mediation since before Second Circuit appeal was even docketed. Atticus will face no prejudice if briefing is temporarily stayed for the final stretch of the Second Circuit appeal.

## CONCLUSION

For these reasons, the Court should grant the Estate and LLC's motion to stay the briefing schedule in this appeal and hold the appeal in abeyance pending a decision by the United States Court of Appeals for the Second Circuit in *Atticus Limited Liability Company v. The Dramatic Publishing Co.*, Case No. 23-1226 (2d Cir.).

Respectfully submitted,

/s/ David G. Hymer
David G. Hymer (Counsel of record)
Riley A. McDaniel
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
dhymer@bradley.com
rmcdaniel@bradley.com

*Attorneys for Appellants The Estate of Nelle Harper Lee and Harper Lee, LLC*

---

[3] *See Table B-4A—U.S. Courts of Appeals Judicial Business* (September 30, 2023), https://www.uscourts.gov/data-news/data-tables/2023/09/30/judicial-business/b-4a.

9

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, I certify that this motion complies with the type-volume limitation of Rule 27(d)(2)(A) of the Federal Rules of Appellate Procedure. This motion contains 1988 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f).

As required by Federal Rule of Appellate Procedure 27(d)(1)(E), this motion Fed. R. App. P. 32(a)(5), Fed. R. App. P. 32(a)(6), and Circuit Rule 32 because this motion has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in Times New Roman type style, font size 14.

/s/  *David G. Hymer*
*Attorney for Appellants The Estate of Nelle Harper Lee and Harper Lee, LLC*

# **CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2025, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by CM/ECF.

    /s/ *David G. Hymer*
*Attorney for Appellants The Estate of Nelle Harper Lee and Harper Lee, LLC*